## G. T. Ingram et al. v. S. Jacobs et al.

### No. 2107.

**Evidence—Proof of Negative Fact—Patent Right—Non-Issuance of Patent.**

In an action brought by a purchaser of a patent right to recover the consideration paid therefor, on the ground that a patent was never issued, plaintiffs testified that they knew of no patent and had not seen any, and defendants, who claimed under the original patentee, testified that they did not know whether the article was patented or not. The Commissioner of Patents, testifying by deposition, in answer to a question whether a patent had been granted on the article in question, stated that he could give no information as to any pending application for a patent without permission of the applicant or his attorney, and that such applications are kept secret. Held, that a finding that no patent had been issued was sustained by the evidence.

APPEAL from Jack. Tried below before Hon. J. W. PATTERSON.

*Nicholson & Nicholson,* for appellants.

No brief for appellee reached the Reporter.

HUNTER, ASSOCIATE JUSTICE.—This suit as instituted by the appellees to cancel certain deeds to lands lying in Jack County, conveyed by them to appellants in part payment for the exclusive right to manufacture and sell a certain "Incline Churn" in all the State of Texas, except 81 counties which were named as having been already sold, which, it is alleged, appellants falsely and fraudulently represented to be patented by letters patent issued by the United States Commissioner of Patents, and to recover back from appellants the sum of $1500 alleged to have been paid appellants in cash and good vendor's lien notes.

It seems that after appellees purchased said patent rights, they sold the right to 80 counties to Henderson, and one county—Limestone—to a party whose name could not be remembered, for which last named county they received two mules, valued at $75. Henderson, before the institution of this suit, had sold three of the counties embraced in his purchase for the sum of $200.

Appellees, plaintiffs below, further alleged all the above facts, and that said "Incline Churn" was not patented; and tendering back a deed to the defendants for all the counties except the four disposed of, and offering to do and perform and pay to defendants whatever the court should deem equitable and proper by reason of their being unable to restore the right to the four counties sold, they prayed for a decree cancelling the contract and deeds, and for recovery of the title to the land, and for judgment for the $1500 paid defendants in cash and notes, and for general relief.

Henderson intervened in the case and set up that the same false representations were made by appellees to him, whereby he was induced to convey to the appellees several tracts of land in Jack County; and tendering back a deed to all the counties conveyed to him, except the three sold by him for $200, which he offered to turn over and pay to plaintiffs, and do and perform all other acts and things as might by the court be deemed equitable and just, prayed for cancellation of the contract of sale to him of the eighty counties and of the several deeds executed by him to plaintiffs, and for recovery of the title to the said several tracts of land.

The defendants denied making the representation that the churn was patented, and claimed that they bought the patent right to the States of Texas, Tennessee, Arkansas, New York and Pennsylvania, paying a large and valuable consideration therefor, from one Hawkins, who claimed to be the patentee, and whom the plaintiffs knew as well as they did, and whose statements as to the patent the plaintiffs heard and relied on, and not upon the representations of defendants, and that they bought

in good faith and sold in good faith, and did not know whether the churn was patented or not, and never told plaintiffs that it was.

The case was tried by the court without a jury, and he filed his conclusions of fact and law, which are in substance, that the sales were made as stated by plaintiffs, and that defendants at the time and before the sale represented to said plaintiffs that said Hawkins had obtained from the United States of America letters patent to said churn, and that plaintiffs relied on these representations and were induced thereby to deed the defendants the lands described in their petition, and to pay defendants the $1500 as alleged; that Hawkins had made the same representations to the defendants, by which they were induced to make the purchase from him, and that defendants at the time they sold to plaintiffs actually believed that a patent had been granted to Hawkins on said churn. But the court finds that said churn was not patented, and is not now patented, and that no patent was ever issued or granted to Hawkins on said churn, but that there was then and is now an application by said Hawkins pending in the patent office for a patent on said churn.

The court then finds that the sale was made to Henderson upon similar representations made by plaintiffs, as alleged, and that they were untrue, and that four of the counties had been disposed of and could not be returned, and finds that the $275 received for them is their proper value, and that said amount shall be deducted from the $1500 which he finds plaintiffs entitled to recover from defendants.

He also finds as matter of law that the deeds should be cancelled, and the title to the lands reinvested in the vendors.

There is a statement of facts in the record, which we have carefully examined, and find that the court's conclusions of fact are fully sustained thereby, and we adopt the court's findings as above.

It is insisted that the court's finding that the churn was not patented is not sustained by the evidence, and this is, in effect, the only serious question in the case.

Appellees testified that they knew of no patent, and had not seen any. The appellants testified that they did not know whether it was patented or not; that they had never seen any. Appellees took the deposition of the Commissioner of Patents, at Washington, D. C., who, in answer to the question whether E. E. Hawkins had ever applied for or obtained a patent on the "Incline Churn," stated that, "I can give no information as to any pending application for a patent, without permission of the applicant or his attorney. Such applications are kept in secrecy."

Under the circumstances, it was sufficient for the plaintiffs to testify that they knew of no patent and had never seen any, inasmuch as the evidence of such a paper, if any existed, was in possession of appellants, or appellants' assignor, and the evidence could not be obtained from the Commissioner of Patents except through the appellants or their assignor or attorney. It was incumbent upon the appellants, under these circumstances, to produce the patent if any existed, and it would have been

an easy matter for them to have done so; and having failed to show a patent, it was proper for the court to conclude, as a fact, that there was none, and make its decree of cancellation accordingly.

This we regard as fully disposing of the case, and we therefore affirm the judgment.

*Affirmed.*

Delivered February 8, 1896.